# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

333 South Grand Avenue
Los Angeles, CA 90071-3197
Tel 213.229.7000
www.gibsondunn.com

Theodore J. Boutrous Jr.
Direct: +1 213.229.7804
Fax: +1 213.229.6804
TBoutrous@gibsondunn.com

April 3, 2023

VIA ECF

Molly C. Dwyer
Clerk of Court
U.S. Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

Re:     *Vargas v. Facebook, Inc.* (No. 21-16499)
        (Argued July 28, 2022 (Owens, Graber & M. Murphy (10th Cir.), JJ.))

Dear Ms. Dwyer:

Facebook submits this Rule 28(j) letter regarding the grant of certiorari in *Acheson Hotels, LLC v. Laufer*, — S. Ct. —, 2023 WL 2634524 (Mar. 27, 2023).

In *Acheson*, a plaintiff with a disability sued a hotel under the Americans with Disabilities Act, claiming the hotel's website violated the Act by failing to provide information about the hotel's accessibility. The question presented was whether the plaintiff suffered Article III injury from that alleged informational deficiency "even if she ha[d] no plans whatsoever to actually book a room at the hotel." *Laufer v. Acheson Hotels, LLC*, 50 F.4th 259, 263 (1st Cir. 2022).

The First Circuit held that she did, reasoning that she was akin to the "tester" plaintiffs in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). *Laufer*, 50 F.4th at 268-71. In doing so, it broke with other courts of appeals, including the Tenth Circuit, which (in a similar case involving the same plaintiff) held that the plaintiff did not suffer a "'distinct and palpable injury'" and that any other holding would be inconsistent with recent standing cases like *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). *Laufer v. Looper*, 22 F.4th 871, 876-81 (10th Cir. 2022); *see* Facebook's Br. 35 (citing *Looper*).

The hotel sought certiorari, arguing that review was necessary to "reconcile older Supreme Court case law taking a more lenient view of standing, [such as] *Havens Realty*, . . . with th[e] Court's more recent decision in *TransUnion*." Cert. Petition at 6, 2022 WL 16838117. The Court granted review. 2023 WL 2634524.

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • Houston • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

**GIBSON DUNN**

Molly C. Dwyer
April 3, 2023
Page 2

The Court's forthcoming opinion could substantially undercut plaintiffs' theory of standing here.  As Facebook has explained, plaintiffs lack standing even under the *Havens Realty* framework because they have not alleged facts showing they were actually subject to the audience-selection tools they challenge.  Facebook's Br. 35-36.  But the grant of review could spell the end for cases that take an inappropriately lenient approach to Article III's injury requirement, including *Havens Realty* and related cases like *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 896 (2d Cir. 1993).  *See* Dkt. 49, 51 (discussing *Ragin* per Court's invitation).

Respectfully submitted,

s/ Theodore J. Boutrous Jr.

Theodore J. Boutrous Jr.
GIBSON, DUNN & CRUTCHER LLP
Counsel for Defendant-Appellee Facebook, Inc.

Attachments

# ATTACHMENTS

2023 WL 2634524
Only the Westlaw citation
is currently available.
Supreme Court of the United States.

ACHESON HOTELS, LLC

v.

Deborah LAUFER

No. 22-429
|

March 27, 2023

Case below, 50 F.4th 259.

**Opinion**

**\*1** The petition for a writ of certiorari is
granted.

**All Citations**

--- S.Ct. ----, 2023 WL 2634524 (Mem)

---

**End of Document**  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

50 F.4th 259
United States Court of Appeals, First Circuit.

Deborah LAUFER, Plaintiff, Appellant,
v.
ACHESON HOTELS,
LLC, Defendant, Appellee.

No. 21-1410
|
October 5, 2022

**Synopsis**
**Background:** Public accommodations tester,
who used wheelchair, brought action against
hotel operator, alleging violation of Americans
with Disabilities Act (ADA) regulation
requiring places of public lodging to
make information about hotel's accessibility
available on any reservation portal to those with
disabilities. The United States District Court for
the District of Maine, George Z. Singal, J., 2021
WL 1993555, granted operator's motion to
dismiss for lack of subject matter jurisdiction.
Tester appealed.

**Holdings:** The Court of Appeals, Thompson,
Circuit Judge, held that:

as matter of first impression, tester suffered
concrete injury and, thus, had standing;

tester's injury was particularized, as required
for standing;

tester had standing to seek injunctive relief; and

action was not moot.

Reversed and remanded.

**Procedural Posture(s):** On Appeal; Motion
to Dismiss for Lack of Subject Matter
Jurisdiction.

**\*263** APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
DISTRICT OF MAINE [Hon. George Z.
Singal, U.S. District Judge]

**Attorneys and Law Firms**

Thomas B. Bacon, with whom Thomas B.
Bacon, P.A. was on brief, for appellant.

Sally A. Morris, with whom Jennifer H. Rohde
and Sally A. Morris, Attorney at Law, LLC,
were on brief, for appellee.

Before Kayatta, Howard, and Thompson,
Circuit Judges.

**Opinion**

THOMPSON, Circuit Judge.

We're asked today to weigh in for the first time
on an Article III standing question that has
divided the circuit courts. Certain regulations
under the Americans with Disabilities Act
("ADA") require places of public lodging to
make information about the hotel's accessibility
available on any reservation portal to those with
disabilities. In the age of websites, that means
a disabled person can comb the web looking
for non-compliant websites, even if she has no
plans whatsoever to actually book a room at the
hotel. Thus, the information could be viewed
as irrelevant to her -- except to whether the

website is complying with the law. Has she suffered a concrete and particularized injury in fact to have standing to sue in federal court? Contrary to the district court's thinking, we think the answer is yes. [1] We further conclude that Laufer has standing to pursue injunctive relief and that the case is not moot. So we reverse.

[1]    By our count of the precedential opinions, three of our sibling circuit courts have said no, and one has said yes. See Laufer v. Arpan LLC, 29 F.4th 1268, 1273-74 (11th Cir. 2022) (standing); Harty v. W. Point Realty, Inc., 28 F.4th 435, 444 (2d Cir. 2022) (no standing); Laufer v. Looper, 22 F.4th 871, 879–81, 883 (10th Cir. 2022) (same); Laufer v. Mann Hosp. L.L.C., 996 F.3d 269, 273 (5th Cir. 2021) (same). One other has said no in a non-precedential judgment without analysis. See Laufer v. Alamac Inc., No. 21-7056, 2021 WL 4765435, at *1 (D.C. Cir. Sept. 10, 2021).

## I.

### A.

Deborah Laufer is disabled. She can't walk more than a few steps without assistance and instead uses a wheelchair or a cane to move around. She also has limited use of her hands and is vision impaired. Among other requirements to accommodate her disabilities, she needs special accessible parking and has to use passageways wide enough and properly graded for her wheelchair. Certain surfaces also need to be lowered so she can reach them, pipes under a sink need to be wrapped so she doesn't scrape her legs on them, and bathrooms need grab bars so she can transfer from her wheelchair.

Defendant Acheson Hotels, LLC, operates The Coast Village Inn and Cottages in a small town on Maine's southern coast. It accepts reservations for the Inn on its own and other travel-related websites. When Laufer first visited Acheson's website, she found that it didn't identify accessible **\*264** rooms, didn't provide an option for booking an accessible room, and didn't give her sufficient information to determine whether the rooms and features of the Inn were accessible to her. She also says she faced the same dearth of information when she visited the Inn's reservation service through thirteen other third-party websites, including Expedia.com, Hotels.com, and Booking.com. And she alleges that she plans to revisit these websites "[i]n the near future" to see if they still lack this information she needs.

### B.

That brings us to the next piece of the story: the statutory background that brings color to Laufer's claim. Congress enacted the ADA recognizing that "many people with physical or mental disabilities have been precluded from [participating in all aspects of society] because of discrimination," 42 U.S.C. § 12101(a)(1), and that those with disabilities, "as a group, occupy an inferior status in our society," id. § 12101(a)(6). Congress found that "individuals with disabilities continually encounter various

forms of discrimination, including ... failure to make modifications to existing facilities and practices, ... segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." Id. § 12101(a)(5); see also Tennessee v. Lane, 541 U.S. 509, 536–37, 124 S.Ct. 1978, 158 L.Ed.2d 820 (2004) (Ginsburg, J., concurring) (describing the congressional impetus of the ADA); Cushing v. Packard, 30 F.4th 27, 59 (1st Cir. 2022) (Thompson, J., dissenting) (same).

Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns ... or operates a place of public accommodation." 42 U.S.C. § 12182(a). Specifically, the ADA makes it discriminatory to provide disabled individuals with an "opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation" unequal to those without disabilities. Id. § 12182(b)(1)(A)(ii). And it defines discrimination to include the "failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." Id. § 12182(b)(2)(A)(ii). Laufer qualifies as disabled within the meaning of the ADA.

The ADA also delegates to the Attorney General the authority to promulgate regulations to carry out § 12182. Id. § 12186(b). One of those regulations pertains to hotel reservations.[2] 28 C.F.R. § 36.302(e). The regulation provides that a "public accommodation" operating a "place of lodging" must "with respect to reservations made by any means ... [i]dentify and describe accessible features in the hotels and guest rooms offered through its reservations service in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs." Id. § 36.302(e)(1)(ii).

[2]     Acheson does not argue that this regulation exceeds the authority granted to the Attorney General under § 12186(b).

The Department of Justice's guidance on these regulations says that "basic nondiscrimination principles mandate that individuals with disabilities should be able to reserve hotel rooms with the same efficiency, immediacy, and convenience as those **265** who do not need accessible guest rooms." 28 C.F.R. pt. 36, app. A (2010), Guidance on Revisions to ADA Regulation on Nondiscrimination on the Basis of Disability by Public Accommodations and Commercial Facilities ("DOJ Guidance"). The Reservation Rule, DOJ says, "is essential to ensure that individuals with disabilities receive the information they need to benefit from the services offered by the place of lodging." Id. And although "a reservations system is not intended to be an accessibility survey," public accommodations still must provide some detail -- "enough detail" -- to allow individuals with disabilities to know what services they can enjoy. Id.

When a public accommodation violates the ADA and discriminates against a disabled person, the ADA and the regulations promulgated under it permit private individuals to bring enforcement actions in federal court. 42 U.S.C. § 12188(a); 28 C.F.R. § 36.501.

### C.

And that's what Laufer did. Availing herself of that procedure, Laufer sued Acheson in the District of Maine. Which she's familiar doing: Laufer is a self-proclaimed ADA "tester" and advocate for disabled persons and has filed hundreds of other ADA-related suits in federal courts from coast to coast. Against Acheson, she brought a single claim for violation of 42 U.S.C. § 12181 and 28 C.F.R. § 36.302(e) (the Reservation Rule) and sought declaratory and injunctive relief, as well as attorney's fees and costs.

Responding, Acheson moved to dismiss. Pointing to Laufer's hundreds of other ADA suits around the country, Acheson said that Laufer had no real intention of booking a room at its Inn. So, Acheson said, Laufer lacks Article III standing to bring her suit, and the court accordingly lacks subject-matter jurisdiction over the case. Laufer opposed the motion and amended her complaint to detail her plans to visit Maine. The district court took Acheson's side and dismissed the case for lack of standing. Laufer timely appealed.

### II.

Acheson moved under Rule 12(b)(1). See Fed. R. Civ. P. 12(b)(1). There are two species of 12(b)(1) attacks on subject-matter jurisdiction: facial and factual challenges. See Torres-Negrón v. J & N Recs., LLC, 504 F.3d 151, 162 (1st Cir. 2007). When the attack is facial, the relevant facts are the well-pleaded allegations in the complaint, which the court must take as true. Toddle Inn Franchising, LLC v. KPJ Assocs., LLC, 8 F.4th 56, 61 n.5 (1st Cir. 2021). If the attack is factual, then the court "need not accept the plaintiff's allegations as true but can 'weigh the evidence and satisfy itself as to the existence of its power to hear the case.' " Id. (quoting Torres-Negrón, 504 F.3d at 163).

The challenge here was only facial, so we, too, take the complaint's well-pleaded allegations as true when analyzing our jurisdiction. See id. Our review of the allegations mirrors the plausibility standard for Rule 12(b)(6) motions. Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016). At the end of the day, then, our question is whether the plaintiff's complaint -- taking as true all of Laufer's factual allegations, drawing all inferences in her favor, but discarding legal conclusions and threadbare recitations of the elements, see Zell v. Ricci, 957 F.3d 1, 7 (1st Cir. 2020) -- contains enough factual heft to demonstrate that the court has subject-matter jurisdiction, see Katz v. Pershing, LLC, 672 F.3d 64, 70 (1st Cir. 2012). We review the district court's decision de novo, meaning we look at things with fresh eyes and without any deference to the able district **\*266** judge's analysis. Amrhein v. eClinical Works, LLC, 954 F.3d 328, 330 (1st Cir. 2020).

### III.

### A.

Article III of the Constitution gives the federal courts the power to hear only "Cases" and "Controversies." U.S. Const. art. III, § 2. That constitutional limitation means courts can resolve only "genuine, live dispute[s] between adverse parties." Carney v. Adams, ——— U.S. ———, 141 S. Ct. 493, 498, 208 L.Ed.2d 305 (2020). Out of that general rule has emerged the multi-faceted doctrine of standing, see id., a doctrine simple to describe but often tricky to apply.

To have standing, a plaintiff has to show three things: that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016). We're focused on the first part here -- injury in fact. An injury in fact, as we use that term of art, means "the invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Amrhein, 954 F.3d at 330 (cleaned up) (quoting Spokeo, 578 U.S. at 339, 136 S.Ct. 1540). (What that all means we'll get into more detail on later.)

Standing doctrine serves many purposes. "It tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982). It also ensures the federal courts aren't morphed into "no more than a vehicle for the vindication of the value interests of concerned bystanders." Id. (quoting United States v. SCRAP, 412 U.S. 669, 687, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973)). And it reflects separation-of-powers principles that the courts shouldn't be used to "usurp the powers of the political branches." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013).

Article III standing operates as a limit on federal courts' jurisdiction. Id. And because it is jurisdictional, it cannot be waived or forfeited and can be raised at any time, by anyone. See Va. House of Delegates v. Bethune-Hill, ——— U.S. ———, 139 S. Ct. 1945, 1951, 204 L.Ed.2d 305 (2019). When it is raised, the burden of showing standing rests on the party invoking the court's jurisdiction. Id. Meeting that burden is mission critical for their case -- no standing, no jurisdiction, and the case must be dismissed.

### B.

Acheson first asserts that the Reservation Rule did not require it to reveal all the information Laufer wants, and so she suffered no injury via a violation of the rule. But we don't have to untangle Acheson's argument on the merits of Laufer's claim to determine her standing.

Standing is, "[i]n essence," a question of "whether the litigant is entitled to have the

court decide the merits of the dispute or of particular issues." <u>Allen</u> v. <u>Wright</u>, 468 U.S. 737, 750-51, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984) (quoting <u>Warth</u> v. <u>Seldin</u>, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)), <u>abrogated on other grounds by</u> **\*267** <u>Lexmark Int'l, Inc.</u> v. <u>Static Control Components, Inc.</u>, 572 U.S. 118, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014). "[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." <u>Hochendoner</u>, 823 F.3d at 734 (quoting <u>Warth</u>, 422 U.S. at 500, 95 S.Ct. 2197); see <u>Fed. Election Comm'n</u> v. <u>Cruz</u>, ––– U.S. ––––, 142 S. Ct. 1638, 1647, 212 L.Ed.2d 654 (2022). In other words, that a plaintiff's ultimate recovery "may be uncertain or even unlikely ... is of no moment" to us now. See <u>Mission Prod. Holdings, Inc.</u> v. <u>Tempnology, LLC</u>, ––– U.S. ––––, 139 S. Ct. 1652, 1660, 203 L.Ed.2d 876 (2019); <u>see also</u> <u>Ariz. State Legislature</u> v. <u>Ariz. Indep. Redistricting Comm'n</u>, 576 U.S. 787, 800, 135 S.Ct. 2652, 192 L.Ed.2d 704 (2015) ("one must not confuse weakness on the merits with absence of Article III standing" (cleaned up)). At this point, our only question is, putting the merits aside, whether Laufer plausibly alleges she was injured under her theory of the underlying legal claim. See <u>Hochendoner</u>, 823 F.3d at 734; <u>see also</u> <u>Cruz</u>, 142 S. Ct. at 1647–48 ("For standing purposes, we accept as valid the merits of appellees' legal claims.").

Nor is Laufer's claim "so implausible that it is insufficient to preserve jurisdiction." <u>See</u> <u>Chafin</u> v. <u>Chafin</u>, 568 U.S. 165, 174, 133 S.Ct. 1017, 185 L.Ed.2d 1 (2013). Though Acheson thinks Laufer could've just picked up the phone to ask for the information and that this was supposed to be an interactive process,

the regulations clearly provide that hotels' reservation portals still must provide some detail -- "enough detail" -- to allow individuals with disabilities to know what services they can enjoy. 28 C.F.R. § 36.302(e); <u>DOJ Guidance</u>, 28 C.F.R. pt. 36, app. A (2010). Which Laufer alleges Acheson's portals didn't do.

So for our standing analysis, we assume, in line with Laufer's theory, that the Reservation Rule requires Acheson to give her certain information. And we further assume, as she alleges in her complaint, that Acheson's website and other third-party reservation services didn't provide that information.

### C.

That brings us to our next question: Is Acheson's failure to provide that information a sufficiently concrete injury to Laufer to give her standing?

Acheson thinks not. It says Laufer never had any intention of traveling to Maine or booking a room at its Inn.[3] Instead, Laufer was just sitting on her computer hunting websites for ADA non-compliance from over a thousand miles away in her Florida home. Whatever information she was denied, then, she never needed. And, its argument goes, that destroys her standing -- it makes her risk of harm counterfactual since "there was no prospect that she would have tried to exercise" her statutory rights to information about accommodations at the Inn she never wanted to go to. So, Acheson says, her injury is not concrete enough -- to be concrete enough, Laufer would need to allege

that her informational drought harmed her in some way.

3    Side note: We mentioned a few pages back that Laufer amended her complaint to allege her intent to travel to Maine. But she now on appeal disclaims any such intent.

### 1.

First we zoom out to take a broader look at what makes an injury concrete.

Concrete injuries must be " 'de facto'; that is, [they] must actually exist." Spokeo, 578 U.S. at 340, 136 S.Ct. 1540. Although easier to recognize, the injury doesn't have to be "tangible," id., "like a picked pocket or a broken leg," to be concrete, Amrhein, 954 F.3d at 330. Intangible **268** injuries -- like "the suppression of free speech or religious exercise" or the invasion of common-law rights "actionable without wallet injury" -- can also be concrete. Id. at 331; see Spokeo, 578 U.S. at 340, 136 S.Ct. 1540; Valley Forge Christian Coll., 454 U.S. at 486, 102 S.Ct. 752 (noneconomic injuries can count just as much as economic ones, and collecting cases).

Because they're less obvious, intangible injuries can raise more of a question on whether there's an Article III case or controversy. See Amrhein, 954 F.3d at 331. In determining whether an intangible harm rises to the level of a concrete injury, the Supreme Court has told us that "both history" (particularly "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts") and "the judgment of Congress play important roles." Spokeo, 578 U.S. at 340-41, 136 S.Ct. 1540. "Congress," the Court has said, "is well positioned to identify intangible harms that meet minimum Article III requirements," id. at 341, 136 S.Ct. 1540, and "may 'elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law,' " TransUnion LLC v. Ramirez, —— U.S. ——, 141 S. Ct. 2190, 2205, 210 L.Ed.2d 568 (2021) (quoting Spokeo, 578 U.S. at 341, 136 S.Ct. 1540). Yet still, not even Congress can "spin a 'bare procedural violation, divorced from any concrete harm' into an 'injury-in-fact,' " Amrhein, 954 F.3d at 331 (quoting Spokeo, 578 U.S. at 341, 136 S.Ct. 1540) -- though the violation of some procedural rights Congress grants can, without any additional harm, be concrete enough, Spokeo, 578 U.S. at 342, 136 S.Ct. 1540. In all, this just means that we judges must still "independently decide whether a plaintiff has suffered a concrete harm under Article III," even if Congress adamantly says they do. TransUnion, 141 S. Ct. at 2205.

### 2.

Our bearings set, back to Laufer's case. Does Laufer's self-admitted status as a tester -- that she had no intent to do anything but test the website's ADA compliance -- mean she hasn't suffered an injury?

Acheson seems to accept that tester status alone doesn't defeat standing -- a party can set out to determine whether public accommodations are complying with a statute. That concession

makes sense. We said just a year ago that a plaintiff's status as a tester does not destroy her standing. See Suárez-Torres v. Panaderia Y Reposteria España, Inc., 988 F.3d 542, 550–51 (1st Cir. 2021). That is, a plaintiff's deliberate choice to see if accommodations are obeying a statute doesn't mean that her injury in fact is any less real or concrete. Id. And Suárez broke no new ground -- the Supreme Court reached the same result forty years ago. See Havens Realty Corp. v. Coleman, 455 U.S. 363, 373–74, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982).

But in somewhat of a twist on that proposition, Acheson further posits that a lack of intent to do anything with the information -- like a tester does -- makes the information not relevant, and the injury accordingly not concrete for standing. To solve that puzzle, we start by turning back to one of the Supreme Court's earlier tester cases, Havens Realty.

### a.

Havens Realty involved racial steering. One Black plaintiff asked Havens Realty on multiple occasions whether it had any units open to rent in its two apartment complexes. Id. at 368, 102 S.Ct. 1114. She was told no, but a white plaintiff who went to test that out was given the opposite **\*269** answer -- there were vacancies. Id. So they sued under section 804 of Fair Housing Act of 1968, 42 U.S.C. § 3604, which prohibited falsely representing the unavailability of a dwelling "because of race, color, religion, sex, or national origin." Havens Realty, 455 U.S. at 373, 102 S.Ct. 1114.

Importantly, this Black plaintiff was a tester, too -- she had no intent of ever renting an apartment from the defendant and went posing as a renter only to figure out if the defendant was violating the law. Id. Yet the Supreme Court said that she still had standing. Id. at 374, 102 S.Ct. 1114. Because she was the object of the misrepresentation and "suffered injury in precisely the form the statute was intended to guard against," the Black tester plaintiff had standing. Id. at 373–74, 102 S.Ct. 1114. "That the tester may have approached the real estate agent fully expecting that [s]he would receive false information, and without any intention of buying or renting a home" was neither here nor there, our judicial superiors said -- it "does not negate the simple fact of injury within the meaning of [the statute]." Id. at 374, 102 S.Ct. 1114; see also Cruz, 142 S. Ct. at 1647 (noting that the Court has long held that an injury is an injury "even if [it] could be described in some sense as willingly incurred," citing Havens Realty); Evers v. Dwyer, 358 U.S. 202, 204, 79 S.Ct. 178, 3 L.Ed.2d 222 (1958) (a Black plaintiff's choice to board a segregated "bus for the purpose of instituting this litigation is not significant" to the standing inquiry).

Havens Realty appears right on the nose for Laufer's case -- both to her status as a tester and the injury she suffered. The Reservation Rule requires that places of lodging make available -- in their accommodation descriptions on their reservations services -- information about the accessible features in their hotels and guest rooms. 28 C.F.R. § 36.302(e)(1)(ii). The purpose of this requirement is "to reasonably permit [Laufer] to assess independently whether a given hotel ... meets ... her accessibility needs." See id. And that is

precisely what Laufer was doing. Just as in Havens Realty, there is no carveout that the information need only be turned over if the person trying to make a reservation actually wants to make a reservation. Compare id. § 36.302(e), with Havens Realty, 455 U.S. at 373–74, 102 S.Ct. 1114 (noting that § 804(d) gave "all 'persons' a legal right to truthful information about available housing" and did not impose any "bona fide offer" requirement). So if the Black tester plaintiff had standing in Havens Realty where the statute gave her a right to truthful information, which she was denied, then Havens Realty would mean that Laufer, too, has standing because she was denied information to which she has a legal entitlement. Just as the Black tester plaintiff's lack of intent to rent an apartment in Havens Realty "d[id] not negate the simple fact of injury," neither does Laufer's lack of intent to book a room at Acheson's Inn negate her standing. See 455 U.S. at 373–74, 102 S.Ct. 1114.

Adding on, the Supreme Court has repeatedly said that denial of information to which plaintiffs have a legal right can be a concrete injury in fact. See Fed. Election Comm'n v. Akins, 524 U.S. 11, 20–21, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998); Pub. Citizen v. U.S. Dep't of Just., 491 U.S. 440, 449–50, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989); see also Spokeo, 578 U.S. at 342, 136 S.Ct. 1540 (noting that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact," citing Akins and Public Citizen). Akins was a suit where a group of voters sought (among other things) information about a list of donors to a political organization they said was subject to public-disclosure requirements **\*270** under elections laws. 524 U.S. at 15, 21, 118 S.Ct. 1777. Noting that "[t]here [wa]s no reason to doubt [the voters'] claim that the information would help them ... evaluate candidates for public office," the Court said that they suffered an injury in fact because they "fail[ed] to obtain information which," at least under their view of the law, "must be publicly disclosed pursuant to a statute." Id. at 21, 118 S.Ct. 1777. Similarly, Public Citizen was a suit by advocacy groups to obtain information they asserted was subject to public disclosure under the Federal Advisory Committee Act. 491 U.S. at 447–48, 109 S.Ct. 2558. The Court said that the groups suffered an injury in fact because they were denied information the statute gave them the right to. Id. at 449, 109 S.Ct. 2558. As the Court put it: "Our decisions interpreting the Freedom of Information Act have never suggested that those requesting information under it need show more than that they sought and were denied specific agency records." Id.; accord Maloney v. Murphy, 984 F.3d 50, 60 (D.C. Cir. 2020) (holding that a FOIA "requester's circumstances -- why he wants the information, what he plans to do with it, what harm he suffered from the failure to disclose -- are irrelevant to his standing" (quoting Zivotofsky v. Sec'y of State, 444 F.3d 614, 617 (D.C. Cir. 2006))).

So to sum it up so far: Havens Realty, Akins, and Public Citizen make clear that a denial of information that a plaintiff is statutorily entitled to have can make for a concrete injury in fact. And Havens Realty and Public Citizen tell us that the denial of information to a member of a protected class alone can suffice to make an

injury in fact -- that person's intended use of the information is not relevant.

**b.**

Were that the whole landscape, this case would prove quite simple. But there's a wrinkle. Acheson jumps all over three lines in a Supreme Court decision from last year, TransUnion, which Acheson says marked a sea change in the law of informational standing that casts doubt on Havens Realty's application to this case.

TransUnion involved a class action brought by consumers against a credit-reporting agency under the Fair Credit Reporting Act. 141 S. Ct. at 2200. Part of the claim was that the credit-reporting agency didn't provide information in the format required by the FCRA. See id. at 2214. The Court addressed the plaintiffs' standing, drawing on the Court's explanation of intangible injuries in Spokeo. (Recall that Spokeo teaches that Congress's judgment is important to finding intangible-but-nonetheless-concrete harms, but its judgment is not the end all be all since there must still be a concrete injury accompanying a bare procedural violation -- though the Court did caveat that the violation of some statutory procedural rights could pose a concrete injury even without additional harm. See 578 U.S. at 340–42, 136 S.Ct. 1540.) An amicus threw in the argument that the plaintiffs had standing for an informational injury, citing to Akins and Public Citizen. 141 S. Ct. at 2214. Which the Court rejected, saying Akins and Public Citizen didn't "control" because the plaintiffs weren't denied any information; rather, they received it

in the wrong format. Id. But -- and here's where it gets important for us -- the Court added a "[m]oreover": It said the plaintiffs "identified no 'downstream consequences' from failing to receive the required information" and that " '[a]n asserted informational injury that causes no adverse effects cannot satisfy Article III.' " Id. (quoting **\*271** Trichell v. Midland Credit Mgmt., Inc., 964 F.3d 990, 1004 (11th Cir. 2020)).

With that "moreover" morsel in mind, Acheson presses that Havens Realty and Public Citizen don't survive Spokeo and TransUnion. And to be sure, it has some support behind it from our sibling circuits who have addressed suits like this one since TransUnion. See Harty v. W. Point Realty, Inc., 28 F.4th 435, 444 (2d Cir. 2022) (concluding an ADA-Reservation-Rule tester plaintiff can't show a concrete injury from the denial of information without also showing downstream consequences post-TransUnion); Laufer v. Looper, 22 F.4th 871, 879–81, 883 (10th Cir. 2022) (same); see also Laufer v. Mann Hosp. L.L.C., 996 F.3d 269, 273 (5th Cir. 2021) (concluding Laufer had no standing because she couldn't show the information she was denied had "some relevance" to her).

Here's the issue: We can't overrule prior Supreme Court cases -- that much the Court has made clear. "And because overruling Supreme Court precedent is the Court's job, not ours, we must follow [precedent] until the Court specifically tells us not to" -- even if we think those older decisions are in tension with newer ones. See United States v. Morosco, 822 F.3d 1, 7 (1st Cir. 2016); see also Scheiber v. Dolby Lab'ys, Inc., 293 F.3d 1014, 1018 (7th Cir. 2002) (Posner, J.) ("[W]e have no authority to

overrule a Supreme Court decision no matter how dubious its reasoning strikes us, or even how out of touch with the Supreme Court's current thinking the decision seems.").

As we said before, we think <u>Havens Realty</u> shows the clear path here -- it is so similar to Laufer's case as to render any distinction insufficiently material. We're thus bound by that decision unless the Supreme Court tells us that <u>TransUnion</u> overruled it.[4] Under Laufer's theory, she had a right to the information that she alleges Acheson didn't give her. And the statute makes that denial of information discrimination against disabled persons and gives Laufer the right to sue in response. That Laufer had no intent to use the information for anything but a lawsuit doesn't change things -- she was still injured in precisely the way the statute was designed to protect.

[4]    True, we're "bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings, particularly when ... a dictum is of recent vintage and not enfeebled by any subsequent statement." <u>McCoy</u> v. <u>Mass. Inst. of Tech.</u>, 950 F.2d 13, 19 (1st Cir. 1991); <u>see United States</u> v. <u>Báez-Martínez</u>, 950 F.3d 119, 132 (1st Cir. 2020). But when later dictum might call into question a prior holding, we're still bound by the Court's earlier holding, not its dictum. <u>See Bais Yaakov</u>

<u>of Spring Valley</u> v. <u>ACT, Inc.</u>, 798 F.3d 46, 50 & n.5 (1st Cir. 2015). And <u>TransUnion</u>'s downstream-consequences-needed-for-informational-injury proviso certainly looks like dictum given that the Court concluded the plaintiffs didn't allege they hadn't received any required information. <u>See</u> 141 S. Ct. at 2214. Moreover, we've called "suspect" arguments that the Supreme Court implicitly overruled one of its prior decisions. <u>See</u> <u>United States</u> v. <u>Symonevich</u>, 688 F.3d 12, 19 n.4 (1st Cir. 2012). And we think it suspect, too, that the Court would overrule <u>Havens Realty</u> implicitly, in dictum, and with only three sentences of explanation. <u>Cf.</u> <u>In re Sealed Case</u>, 151 F.3d 1059, 1064 (D.C. Cir. 1998) ("[I]t is rather implausible that the Supreme Court, in dicta -- not to mention in a footnote -- meant to overrule <u>sub</u> <u>silentio</u> the holdings in" prior cases.).

### c.

### i.

Acheson's various attempts to distinguish <u>Havens Realty</u> don't change our view that it governs here.

Acheson says that the denial of information here wasn't in itself discriminatory, **\*272** but the lies to the plaintiff in <u>Havens Realty</u> were. Yes, the misinformation in <u>Havens Realty</u> certainly looks like it was borne out of

racial animus. Yet still, Acheson's distinction is hard to square up. The regulations here specifically make the denial of accessibility information actionable discrimination against disabled persons, see 28 C.F.R. § 36.501; DOJ Guidance, 28 C.F.R. pt. 36, app. A (2010) (noting the Reservation Rule is borne out of "basic nondiscrimination principles") -- just as the statute made the denial of information in Havens Realty actionable racial discrimination.

Next, echoing our colleagues in the Fifth Circuit, Acheson claims that the misrepresentation in Havens Realty had "some relevance" to the tester plaintiff, but the information Laufer wanted here didn't since she never wanted to book a room at the Inn. See Mann Hosp., 996 F.3d at 273. But the only relevance the misrepresentation had to the Black tester plaintiff in Havens Realty was to help her figure out if the defendant was breaking the law by engaging in racial steering. See 455 U.S. at 373–74, 102 S.Ct. 1114. And she had standing. Id. Same goes here. See also Laufer v. Arpan LLC, 29 F.4th 1268, 1281 (11th Cir. 2022) (Jordan, J., concurring) (explaining why this distinction doesn't work).[5]

[5]     Similarly, the credit-union cases relied on by Acheson are inapposite. Those cases concluded an ADA tester had no standing to sue for credit-union websites' failure to have information in a format accessible to disabled persons where there was a legal bar to the plaintiff joining the credit union. See, e.g., Carello v. Aurora Policemen Credit Union, 930 F.3d 830, 834 (7th Cir. 2019) (Barrett, J.); Griffin v. Dep't of Lab. Fed. Credit

Union, 912 F.3d 649, 654 (4th Cir. 2019). There are no legal bars to Laufer's booking a room at the Inn. See also Carello, 930 F.3d at 834 (Barrett, J.) (making clear the holding was "no broader" than one about plaintiffs who are "legally barred" from using the defendant's services (emphasis in original)). Additionally, Carello affirmed the proposition that in "informational injury" cases (which, according to that court, "typically" but do not exclusively involve "sunshine law[s]"), "a plaintiff 'need not allege any additional harm beyond' [her] failure to receive information that the law renders subject to disclosure." 930 F.3d at 835 (quoting Spokeo, 578 U.S. at 341, 136 S.Ct. 1540).

Further, Acheson posits that Laufer wasn't injured in the way the statute was designed to protect since she wasn't prevented from reserving a room. Au contraire: The regulation was not designed only to make sure that a disabled person could book a room -- the Reservation Rule's requirements are meant to ensure that disabled persons can "assess independently whether a given hotel or guest room meets his or her accessibility needs." 28 C.F.R. § 36.302(e)(1)(ii). The rule recognizes that the public information on accessibility features is necessary to make sure disabled persons are "able to reserve hotel rooms with the same efficiency, immediacy, and convenience as those who do not need accessible guest rooms." DOJ Guidance, 28 C.F.R. pt. 36, app. A (2010). Denying Laufer the same "efficiency, immediacy, and convenience" as those not requiring

accommodations is exactly the discrimination the regulations are trying to stamp out.

**ii.**

Nor, with respect, do we find our sibling circuits' explanations of why Laufer doesn't have standing under Havens Realty, or Public Citizen, persuasive.

The Second Circuit recently said a Reservation-Rule tester plaintiff had no concrete injury because he couldn't "show ... an 'interest in using the information beyond bringing his lawsuit.' " Harty, 28 F.4th at 444 (cleaned up, then a new alteration added) (quoting Looper, 22 F.4th at 881; see also **\*273** Laufer v. Ganesha Hosp. LLC, No. 21-995, 2022 WL 2444747, at \*2 (2d Cir. July 5, 2022) (summary order) (applying Harty to a suit brought by Laufer in Connecticut). So Havens Realty didn't help the plaintiff, the court said, because it shows testers can have standing only when they suffer some actual injury. Harty, 28 F.4th at 444. But that distinction really doesn't do anything. No one disputes that being a tester alone doesn't give you standing -- the question is whether the test left her with some injury. And our judicial neighbors did not explain why the ADA tester plaintiff didn't suffer an injury but the Black tester plaintiff in Havens Realty did, even though her only "interest in using the information" was testing compliance and bringing her lawsuit -- just as with an ADA-Reservation-Rule tester.

The Tenth Circuit suggested there lies some distinction in the fact that Havens Realty involved a misrepresentation, but the ADA-Reservation-Rule cases involve a lack of any representation. See Looper, 22 F.4th at 879. Yet that seems a distinction without a difference. In either case, in order to shine a light on unlawful discrimination, the law conferred on the plaintiff "a legal right to truthful information" about an accommodation. Havens Realty, 455 U.S. at 373, 102 S.Ct. 1114; see also Arpan, 29 F.4th at 1282 (Jordan, J., concurring).

The Tenth Circuit also thought that Akins and Public Citizen made clear years ago that there needed to be a downstream consequence from the denial of information. See Looper, 22 F.4th at 881. True, the Court in both cases described what the plaintiffs wanted to do with the information they sought. See Akins, 524 U.S. at 21, 118 S.Ct. 1777 (noting the plaintiffs wanted to use the information "to evaluate candidates for public office" and "the role that [the organization]'s financial assistance might play in a specific election"); Pub. Citizen, 491 U.S. at 449, 109 S.Ct. 2558 (noting the plaintiff wanted to "monitor [the organization's] workings and participate more effectively in the judicial selection process"). But, for one thing, that doesn't show why Havens Realty wouldn't still apply and give standing, since the Black tester plaintiff there wanted the information only to test the defendant's compliance with the law. See 455 U.S. at 373–74, 102 S.Ct. 1114. And, for another, it's hard to square with the Court's clear statement in Public Citizen that the Court's "decisions interpreting the Freedom of Information Act have never suggested that those requesting information under it need show more than that they sought and were denied specific agency records." 491 U.S. at 449, 109 S.Ct. 2558; see also Maloney, 984

F.3d at 60 (the D.C. Circuit holding that a FOIA "requester's circumstances -- why he wants the information, what he plans to do with it, what harm he suffered from the failure to disclose -- are irrelevant to his standing" (quoting Zivotofsky, 444 F.3d at 617)). That the plaintiff had a reason it wanted the information then seems more a matter of factual context than a legal rule. Moreover, the Court recently reaffirmed that "the violation of a procedural right granted by statute can be sufficient in some circumstances" such that plaintiffs "need not allege any additional harm beyond the one Congress has identified," specifically citing Akins and Public Citizen. Spokeo, 578 U.S. at 342, 136 S.Ct. 1540. And when giving its parenthetical explanations of Akins and Public Citizen, the Court did not mention any of the "downstream effects" the plaintiffs in those cases may have suffered from the denial of information or their purpose for the information -- just that they were denied information a statute gave them the right to have. See id.

We understand that our sibling circuits thought Havens Realty doesn't decide this case. But we respectfully disagree. None **\*274** has convincingly explained why Havens Realty can't illuminate the path to decision. [6]

[6] Reinforcing our view that Havens Realty can be relied on here is that other cases exist where the Court compared the ADA with the FHA or Title VII (two other of the nation's most important antidiscrimination regimes) to guide a decision under one of those statutory schemes. See, e.g., Bragdon v. Abbott, 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998)

(looking to the definition of "handicap" in the Fair Housing Amendments Act and its interpretation by other courts for guidance in interpreting the "ADA's definition of disability"); Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Servs., 532 U.S. 598, 610, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001) (in a case brought under both the ADA and the Fair Housing Amendments Act, interpreting in parallel the definition of "prevailing party" in the attorney fees provisions of both statutes); Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 357, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013) (in a Title VII case, contrasting the direct discussion of workplace retaliation in the ADA with the absence of similar "clear textual terms" in Title VII).

### d.

What's more, Laufer suffered a concrete injury in fact even if TransUnion ushered in a new era of informational injury. TransUnion says that informational injuries need to "cause[ ] ... adverse effects" to satisfy Article III. 141 S. Ct. at 2214 (quoting Trichell, 964 F.3d at 1004). One could read the informational injury to the Black tester plaintiff in Havens Realty as doing so: She was discriminated against in violation of the law. Dignitary harm or stigmatic injuries caused by discrimination have long been held a concrete injury in fact, even without informational injury. See Heckler v. Mathews, 465 U.S. 728, 738-40, 104 S.Ct. 1387, 79 L.Ed.2d 646 (1984); see also Allen, 468 U.S. at 755, 104 S.Ct. 3315 (individuals

personally denied equal treatment under the law can have standing); Carello v. Aurora Policemen Credit Union, 930 F.3d 830, 833-34 (7th Cir. 2019) (Barrett, J.) ("There is no doubt that dignitary harm is cognizable; stigmatic injury is 'one of the most serious consequences' of discrimination." (citation omitted)). "[D]iscrimination itself, by perpetuating 'archaic and stereotypic notions' or by stigmatizing members of the disfavored group as 'innately inferior' and therefore as less worthy participants in the political community, can cause serious noneconomic injuries to those persons who are personally denied equal treatment solely because of their membership in a disfavored group." Heckler, 465 U.S. at 739–40, 104 S.Ct. 1387 (citation omitted). Indeed, TransUnion itself cited Allen and "discriminatory treatment" as an example of "concrete, de facto injuries that were previously inadequate at law" that "Congress may 'elevate to the status of legally cognizable injuries.' " 141 S. Ct. at 2204–05 (quoting Spokeo, 578 U.S. at 341, 136 S.Ct. 1540).

Laufer alleges she suffered "frustration and humiliation" when Acheson's reservation portals didn't give her adequate information about whether she could take advantage of the accommodations. Without that information, Laufer is put on unequal footing to experience the world in the same way as those who do not have disabilities. She alleges that the "discriminatory conditions" on Acheson's website contribute to her "sense of segregation and isolation" and deprive her of "full and equal enjoyment of the goods, services, facilities, and/or accommodations available to the general public." Avoiding that was part of the point of the ADA -- the Act

"is a measure expected to advance equal-citizenship stature for persons with disabilities" by aiming to "guarantee a baseline of equal citizenship by protecting against stigma and systematic exclusion from public and private opportunities." **\*275** Lane, 541 U.S. at 536, 124 S.Ct. 1978 (Ginsburg, J., concurring) (cleaned up). In a similar case, the Eleventh Circuit found that this harm alleged by Laufer was sufficient stigmatic injury to give rise to Article III standing. Arpan, 29 F.4th at 1274. We need not decide that exact issue here. Rather, we find that Laufer's feelings of frustration, humiliation, and second-class citizenry are indeed "downstream consequences" and "adverse effects" of the informational injury she experienced. See TransUnion, 141 S. Ct. at 2214. So even if post-TransUnion a plaintiff in the same shoes as the Black tester plaintiff in Havens Realty must show some "additional harm" from the denial of information to demonstrate a concrete injury, Laufer still meets that newly set bar.

### D.

Pulling out all the stops, Acheson also contends that Laufer's injury is not particularized. On top of being concrete, the plaintiff's injury must be particularized to show injury in fact. Amrhein, 954 F.3d at 330–31. Particularized means that the injury must "affect the plaintiff in a personal and individual way." Spokeo, 578 U.S. at 339, 136 S.Ct. 1540 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 n.1, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). In other words, the injury has to be "personal," "distinct," and "not undifferentiated." Id. (cleaned up and citations omitted). In contrast, "[i]njuries that

are too 'widely shared' or are 'comparable to the common concern for obedience to the law' " may not be particularized. <u>Lyman</u> v. <u>Baker</u>, 954 F.3d 351, 361 (1st Cir. 2020) (quoting <u>Becker</u> v. <u>Fed. Election Comm'n</u>, 230 F.3d 381, 390 (1st Cir. 2000)). The particularization requirement "reflects the commonsense notion that the party asserting standing ... must allege that he, himself, is among the persons injured by th[e defendant's] conduct." <u>Hochendoner</u>, 823 F.3d at 731–32. That way ensure the issue is sharpened "in a concrete factual context" with parties with "a direct stake in the outcome." <u>Id.</u> (citations omitted).

Under any reading of <u>Havens Realty</u> or <u>TransUnion</u>, Laufer's injury is particularized. As a pure informational injury, Laufer was not given information she personally had a right to under the ADA and its regulations, causing her precisely the type of harm Congress and the regulation sought to curb -- the unequal ability to know what accommodations a person with disabilities can take advantage of. <u>See</u> <u>Havens Realty</u>, 455 U.S. at 374, 102 S.Ct. 1114 (the Black tester plaintiff had standing because she "alleged injury to <u>her</u> statutorily created right to truthful housing information" (emphasis added)). And she alleges that she personally suffered the loss of dignity in feeling less than equal, enduring humiliation, frustration, and embarrassment. <u>See</u> <u>Heckler</u>, 465 U.S. at 739–40, 104 S.Ct. 1387; <u>cf.</u> <u>Allen</u>, 468 U.S. at 755–56, 104 S.Ct. 3315 (dignitary harm from discrimination wasn't concrete because the discrimination wasn't personally experienced); <u>Carello</u>, 930 F.3d at 834 (concreteness and particularity are "two sides of the same coin" for dignitary harms since discrimination that doesn't impact the plaintiff isn't concrete and

also doesn't affect the plaintiff in an individual way). Those harms affected her "in a personal and individual way." <u>Lujan</u>, 504 U.S. at 560 n.1, 112 S.Ct. 2130.

Further, contrary to Acheson's suggestions, Laufer's claim is not a generalized grievance based on her desire that Acheson follow the law. For starters, the Court's generalized-grievance cases typically focus on allegedly unlawful conduct by the government, <u>id.</u> at 576, 112 S.Ct. 2130, and are driven, at least in part, by separation-of-powers concerns with the **\*276** courts supervising the co-equal branches' activities, <u>see</u> <u>id.</u> at 577, 112 S.Ct. 2130. But even more, <u>Lujan</u> also recognized that "[n]othing in [it] contradicts the principle that 'the injury required by Art. III may exist solely by virtue of "statutes creating legal rights, the invasion of which creates standing," ' " even though the right is widely shared. <u>Id.</u> at 578, 112 S.Ct. 2130 (cleaned up with new alterations added) (quoting <u>Warth</u>, 422 U.S. at 500, 95 S.Ct. 2197). Nothing in the ADA or its regulations "abandon[s] the requirement that the party seeking review must [her]self have suffered an injury." <u>See</u> <u>id.</u> (quoting <u>Sierra Club</u> v. <u>Morton</u>, 405 U.S. 727, 738, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972)). As we've already explained, the ADA and its regulations offer a route to those themselves suffering an injury by being discriminated against on the basis of their disability. It does not permit anybody to sue just because she saw an ADA violation. <u>See</u> 42 U.S.C. § 12188(a)(1); 28 C.F.R. § 36.501(a). Which shows the differentiation of the injury: Laufer is a person with disabilities -- not just any one of the hundreds of millions of Americans with a laptop -- and personally suffered the denial of information the law

entitles her, as a person with disabilities, to have.


## IV.

Onward we go to the next step of the standing analysis -- Laufer's standing to seek injunctive relief.[7]

[7] To be clear, Laufer's complaint seeks only declaratory and injunctive relief, as well as attorney's fees and costs. It does not seek damages for past violations. Damages are not an available remedy for private suits under Title III of the ADA. See 42 U.S.C. § 12188(a)(1); 28 C.F.R. § 36.501(a); see also G. v. Fay Sch., 931 F.3d 1, 9 (1st Cir. 2019).

The party seeking review has to show they have standing for each form of relief they seek. Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc., 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). For Laufer's claim for injunctive relief, demonstrating her "past exposure to illegal conduct" -- here, her pre-suit encounters with Acheson's reservation system on its and third parties' websites -- isn't "in itself" sufficient to show standing absent "continuing, present adverse effects." City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (quoting O'Shea v. Littleton, 414 U.S. 488, 495-96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974)). Standing for injunctive relief depends on "whether [s]he [i]s likely to suffer future injury," id. at 105, 103 S.Ct. 1660 -- that is, "a sufficient likelihood that she will again be wronged in a similar way,"

Gray v. Cummings, 917 F.3d 1, 19 (1st Cir. 2019) (quoting Am. Postal Workers Union v. Frank, 968 F.2d 1373, 1376 (1st Cir. 1992)).

That proviso is sometimes referred to as "imminence." See, e.g., Berner v. Delahanty, 129 F.3d 20, 24 (1st Cir. 1997). Though a "somewhat elastic concept," imminence shouldn't be stretched too far -- it "ensure[s] that the alleged injury is not too speculative for Article III purposes." Lujan, 504 U.S. at 564 n.2, 112 S.Ct. 2130. At bottom, it requires that the injury not be "conjectural" or "hypothetical" or simply "possible." See Clapper, 568 U.S. at 412, 416, 420, 133 S.Ct. 1138. For an injury to be imminent enough to provide standing, it must be "certainly impending." Id. at 416, 133 S.Ct. 1138.

Describing the imminence of a future harm, our judicial higher-ups have said that a plaintiff's proclaimed " 'intent' to return to the places they had visited before -- where they will presumably, this time, be [injured again] -- is simply not enough." **\*277** Lujan, 504 U.S. at 564, 112 S.Ct. 2130. For example, plaintiffs' averred intent to visit Egypt and Sri Lanka at some unspecified point "[i]n the future" was insufficient to show an imminent injury. See id. at 563–64, 112 S.Ct. 2130. "Such 'some day' intentions -- without any description of concrete plans, or indeed even any specification of when the some day will be -- do not support a finding of the 'actual or imminent' injury." Id. at 564, 112 S.Ct. 2130.

Here, though, Laufer's plans to revisit the websites are far from those "some day intentions" found insufficient in Lujan -- she's alleged her "concrete plans" to go back to the

websites in the near future. As an ADA tester, Laufer says she has a sophisticated system to continue monitoring the non-compliant websites she finds. She visits the website multiple times before filing her complaints, and then schedules herself to review the website again after the complaint is filed. And she says she will revisit Acheson's online reservation system "[i]n the near future" to test its ADA compliance. So, far from a mere possibility that someday Laufer will eventually head overseas to Sri Lanka or Egypt to see an endangered species that'll be forced into extinction, she has given her "description of [her] concrete plans" to revisit the websites, easily accessible from her home, in the near future. See Lujan, 504 U.S. at 563–64, 112 S.Ct. 2130; cf. Carney, 141 S. Ct. at 501–03 (plaintiff's assertion that he "would apply" for the job, "without any actual past injury, without reference to an anticipated timeframe, ... and without any other supporting evidence" was not sufficient in a "highly fact-specific case"); Summers v. Earth Island Inst., 555 U.S. 488, 496, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009) (an assertion that the plaintiff "wants to go" to the area affected is too "vague"). Take all of that, too, with the fact that Laufer is a self-proclaimed ADA tester who makes it her vocation to test websites for ADA compliance. See Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1340 (11th Cir. 2013) (considering that "ADA testing appears to be [the plaintiff's] avocation or at least what he does on a daily basis"). Also, importantly, Laufer asserts in her reply brief that while Acheson has made its website ADA-compliant, Acheson hasn't persuaded the third-party reservation services to do the same (a point we return to in section V). Her likelihood of future injury is far from conjectural or hypothetical; it's sufficiently imminent. [8]

[8]    Judge Howard agrees that the complaint adequately alleges standing for declaratory relief, but he is doubtful that it sufficiently alleges standing to pursue injunctive relief.

## V.

Swinging its final punch, Acheson tucks in a quick suggestion that the case may also be moot. It says that because its website now shows that the Inn has no ADA-compliant lodging, Laufer can't contend that she'll suffer the same injury again.

Mootness is another part of the Article III case-or-controversy schema. Because we "decide only live controversies that will have a real effect on real parties in interest," we don't decide cases where the parties' dispute has since been resolved. Bos. Bit Labs, Inc. v. Baker, 11 F.4th 3, 8 (1st Cir. 2021); see Chafin, 568 U.S. at 172, 133 S.Ct. 1017. Since mootness goes to our Article III jurisdiction, we have to cross-check for it throughout the litigation: " 'It is not enough that a dispute was very much alive when suit was filed'; the parties must 'continue' " -- even on appeal -- " 'to have a personal stake' in the ultimate disposition of the lawsuit." Chafin, 568 U.S. at 172, 133 S.Ct. 1017 (cleaned **\*278** up) (quoting Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477-78, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990)).

Yet getting a case declared moot is a "demanding standard" -- one met only when

" 'it is impossible for a court to grant any effectual relief whatever' to [the plaintiff] assuming it prevails." Mission Prod. Holdings, 139 S. Ct. at 1660 (quoting Chafin, 568 U.S. at 172, 133 S.Ct. 1017). The "heavy burden" of meeting that demanding standard falls on the party asserting mootness; so here, Acheson. Bos. Bit Labs, 11 F.4th at 8. Acheson hasn't met it.

Laufer's alleged violations are not just about what was (or more aptly, wasn't) on Acheson's own website. Laufer also alleged that Acheson violated the Reservation Rule via the booking portals on third-party booking websites, like Hotels.com. And as noted earlier, she avers that although Acheson's own website made changes, it hasn't gotten the third parties to update their websites.

Again, to assess mootness, we need not decide whether Acheson can be held liable for those third-party websites' non-compliance. That a plaintiff's ultimate recovery "may be uncertain or even unlikely ... is of no moment" to the mootness inquiry. Mission Prod. Holdings, 139 S. Ct. at 1660. Instead, we assume the claim's legal validity to determine whether it is nonetheless moot. See Town of Portsmouth v. Lewis, 813 F.3d 54, 61 (1st Cir. 2016); see also Mission Prod. Holdings, 139 S. Ct. at 1660.

And, for the record, nothing seems "so implausible," Chafin, 568 U.S. at 174, 133 S.Ct. 1017, or "wholly insubstantial and frivolous" about Laufer's claim based on the third-party websites, see Town of Portsmouth, 813 F.3d at 61. Acheson hasn't suggested that the third-party websites have been updated, and the regulations provide that the

public accommodation's obligations extend to "reservations made by any means, including ... through a third party." 28 C.F.R. § 36.302(e) (1); see DOJ Guidance, 28 C.F.R. pt. 36, app. A (2010) (rejecting hotels' notice-and-comment arguments that "they are unable to control the actions of unrelated parties" and stating that hotels "that use third-party reservations services ... must provide these third-party services with information concerning the accessible features of the hotel and the accessible rooms"). Nor has Acheson represented that it made that information available to all of the thirteen third-party booking websites that Laufer alleges were non-compliant, but they just haven't put the info online. Cf. DOJ Guidance, 28 C.F.R. pt. 36, app. A (2010) (providing that if the hotel makes the information about accessibility available to the third-party booking website but the third-party doesn't give the information out, the hotel "will not be responsible"). So there's still a live claim to decide. [9]

9    Given our conclusion, we need not decide at this point whether the changes to Acheson's own website in response to this litigation would be sufficient to moot the case in the absence of the allegations concerning unremediated third-party websites. See Friends of the Earth, 528 U.S. at 189, 120 S.Ct. 693 ("[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to

recur." (citation and internal quotation marks omitted)).

* * *

For all these reasons, the district court has Article III jurisdiction over this case (at least for now). The judgment of the district court is therefore **reversed**, and **\*279** the case is **remanded** for further proceedings. Costs to appellant.

## All Citations

50 F.4th 259, 66 NDLR P 47

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.