No. 21-16499

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ROSEMARIE VARGAS; KISHA SKIPPER; JAZMINE SPENCER;
DEILLO RICHARDS; and JENNY LIN, on behalf of themselves individually,
and on behalf of all others similarly situated,

*Plaintiffs-Appellants,*

v.

FACEBOOK, INC.

*Defendant-Appellee.*

_____

On Appeal from the United States District Court
for the Northern District of California, San Francisco
No. 3:19-cv-050810-WHO
Honorable William H. Orrick

_____

## APPELLANTS' RESPONSE TO APPELLEE'S PETITION
## FOR REHEARING EN BANC OR PANEL REHEARING

_____

Gerard V. Mantese
*gmantese@manteselaw.com*
MANTESE HONIGMAN, P.C.
1361 E. BIG BEAVER RD.
Troy, MI 48083
Tel: 248-457-9200

Matthew Turchyn
*mturchyn@hertzschram.com*
HERTZ SCHRAM P.C.
1760 S. Telegraph Road, Suite 300
Bloomfield Hills, MI 48302
Tel: 248-335-5000

Michael D. Seplow
*mseplow@sshhzlaw.com*
SCHONBRUN SEPLOW HARRIS
HOFFMAN & ZELDES, LLP
9415 Culver Boulevard, #115
Culver City, CA 90232
Tel: 310-396-0731

*Counsel for Appellants.*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES......................................................................ii

INTRODUCTION ...............................................................................1

BACKGROUND……….……….....................................................................1

REASONS FOR DENYING THE PETITION …………………………...............4

I.     Facebook Has Not Satisfied the Rigorous Rehearing Standards…………..4

II.    This Circuit Uniformly Applies *Twombly-Iqbal* in the Standing Context….7

III.    The Panel Majority's Standing Analysis Comports with *TransUnion*…….10

IV.    The Panel Majority Properly Applies Section 230 Precedent.……………. 11

CONCLUSION……….………………………………………………….…..15

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                              **<u>Page(s)</u>**

*Acheson Hotels, LLC v. Laufer*,
    143 S. Ct. 1053 (petition granted, 2023) ……………………….…….. 6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ……………………..………………………… 9, 10

*Center for Biological Diversity v. Bernhardt*,
    946 F.3d 553 (9th Cir. 2019) ………………………………….……7

*Dyroff v. Ultimate Software Group, Inc.*,
    934 F.3d 1093 (9th Cir. 2019) …………………………….....…….. 11, 12

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) …………...…………….. 4, 11, 12, 13, 14, 15

*Hart v. Massanari*,
    266 F.3d 1155 (9th Cir. 2001) ………………………..………..……… 5, 6, 7

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) ……………………………………………. 4, 6, 10, 11

*Jones v. L.A. Cent. Plaza LLC*,
    74 F.4th 1053 (9th Cir. 2023) ………………………..……………….....… 5, 8

*Keohane v. Fla. Dep't of Corr. Sec'y*,
    981 F.3d 994 (11th Cir. 2020) …………………………………………... 5

*Maya v. Centex Corp.*,
    658 F.3d 1060 (9th Cir. 2011) ………………………….……………... 7, 8

*McCauley v. City of Chicago*,
    671 F.3d 611 (7th Cir. 2011) ……………………………………….… 10

*Namisnak v. Uber Techs., Inc.*
    971 F.3d 1088 (9th Cir. 2020) ……………………….……………….7, 8

## TABLE OF AUTHORITIES – CONT'D

<u>Cases</u> - *Continued* <u>Page(s)</u>

*Tailford v. Experian Info. Sols., Inc.*
  26 F.4th 1092 (9th Cir. 2022) …………………………………………….. 11

*TransUnion LLC v. Ramirez*
  141 S. Ct. 2190 (2021) …………………………………………….. 10, 11

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*
  62 F.4th 517 (9th Cir. 2023) …………………………………………….. 8

**<u>Statutes</u>**

42 U.S.C. § 3601 ……………………………..…………………………… 1, 2, 10

47 U.S.C. § 230 …………………………...………… 1, 3, 4, 6, 7, 11, 12, 14, 15

**<u>Court Rules</u>**

Fed. R. Civ. P. 12 …………………………………………………………… 8

Fed. R. App. P. 35 …………………………………………….. 4, 5, 6, 7

Fed. R. App. P. 40 …………….…………………………………… 5, 6, 7

**<u>Other</u>**

Richard S. Arnold, *Why Judges Don't Like Petitions for Rehearing*,
3 J. App. Prac. & Process 29 (2001) …………………………………...…. 5

## INTRODUCTION

Facebook's petition for rehearing en banc or panel rehearing should be denied because Facebook has not established a basis for either form of rehearing. Facebook fails to cite or address the appropriate standards for rehearing and fails to explain how its arguments warrant rehearing under the rules. Instead, Facebook simply reiterates previous arguments already asserted elsewhere.

En banc rehearing should be denied because the challenged June 23, 2023 opinion does not push any legal boundaries. It is consistent with this Circuit's jurisprudence on both Article III standing and section 230 of the Communications Decency Act. Additionally, the opinion is not an exceptionally important development of this Circuit's jurisprudence because it is unpublished and fact-driven. Panel rehearing is also not appropriate; Facebook rehashes its previous arguments in lieu of identifying an issue of law or fact that the panel overlooked or misapprehended.

## BACKGROUND

Plaintiffs allege that Facebook violated the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, by creating and promoting tools that easily allowed housing advertisers to discriminate against members of protected classes. 2-ER-250, ¶ 58. Facebook mined personal data from its online users and developed algorithms that divided the data into categories, including categories based on FHA-protected characteristics. 2-ER-246-47, 250, ¶¶ 45, 48, 58. Facebook then sold housing advertisers the ability to use Facebook's Ad Platform to select the "eligible audience" for their ads based on Facebook's own user categories. 2-ER-248, ¶ 53.

Facebook invited advertisers to direct housing ads to only certain people by filtering out Facebook users with specific attributes, including protected characteristics like gender and race. 2-ER-249, ¶ 54. Facebook provided advertisers with toggle buttons, drop-down menus, and search boxes which they could use to prevent users in protected classes from receiving certain ads. *Id*. If, for example, a housing advertiser wanted to hide its housing ad from women, it clicked a Facebook toggle button to prevent female users from seeing that ad. *Id*. In addition to creating the discriminatory tools, Facebook discriminatorily delivered the ads, using its ad-delivery algorithm to exclude members of protected classes from receiving certain housing ads. 2-ER-249-50, ¶ 53, 59.

Plaintiffs allege they were harmed by Facebook's actions. Despite being ready, willing, and able to move, Plaintiffs were unable to locate suitable housing on Facebook's platform because they were prevented from receiving certain housing ads based on their FHA-protected characteristics. 2-ER-253, 255-64, ¶ 70, 79-152. For example, in early 2019, Plaintiff Vargas sat side-by-side with a Caucasian friend, and they both searched for housing on Facebook Marketplace, using identical search criteria. 2-ER-257, ¶ 95. Plaintiff Vargas' Caucasian friend received a greater number of housing ads, and these additional ads offered housing in locations that Plaintiff Vargas found preferable. *Id*.

The district court expressed concerns about Plaintiffs' standing but rejected Plaintiffs' repeated requests to conduct limited jurisdictional discovery on standing issues. On August 20, 2021, the district court dismissed this case on the pleadings, holding that Plaintiffs "failed to plead facts supporting a plausible injury in fact

sufficient to confer standing on any plaintiff," and that even if Plaintiffs "had alleged sufficient facts to plausibly state an injury from Facebook's discontinued provision of Targeting Ad tools for paid advertisers, their claims would still be barred by Section 230 of the Communications Decency Act." 1-ER-8. This appeal followed.

On June 23, 2023, the panel issued an unpublished opinion reversing the district court. The panel majority held that Plaintiffs have standing. Mem. 4. The majority noted Plaintiffs' allegation that Facebook provided discriminatory tools to housing advertisers, which enabled advertisers to withhold certain ads from Plaintiffs based on protected characteristics. Mem. 2-3. The majority then quoted Plaintiffs' Third Amended Complaint detailing Plaintiff Vargas' side-by-side housing search comparison with her Caucasian friend, thereby demonstrating that Plaintiffs had alleged a specific, concrete example of Facebook's discriminatory Ad Platform in action. Mem. 3.

The panel majority found that the district court erred by "fault[ing] the complaint for not identifying *specific* ads that Plaintiff Vargas did not see" given that "Plaintiffs' very claim is that Facebook's practices *concealed* information from housing-seekers in protected classes." Mem. 4. "[N]othing in the case law requires that a plaintiff identify specific ads that she could not see when she alleges that an ad-delivery algorithm restricted her access to housing ads in the first place." Mem. 4. Although Facebook and the dissent assert that Plaintiffs did not specify whether they were excluded from seeing paid—rather than user-generated—ads, the majority held that given the alleged "magnitude of paid advertising" on Facebook, it was

"plausible to infer that one or more of the ads that Plaintiff Vargas could not access because of Facebook's methods was paid." Mem. 4.

The panel also found that Facebook is not immune under section 230 because Facebook itself engaged in conduct that "contribute[d] materially to the alleged illegality[.]" Mem. 6 (quoting *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008)). The panel rejected Facebook's efforts to distinguish *Roommates.com*, holding that: (1) Facebook was a co-developer, not a passive transmitter of third-party content; (2) Facebook offered tools that easily allowed housing advertisers to exclude all members of a protected class from the audience for an ad; and (3) Facebook's exclusionary tools were not "neutral" merely because they were available to all advertisers and lawful in some contexts. Mem. 6-9.

## REASONS FOR DENYING THE PETITION

## I. Facebook Has Not Satisfied the Rigorous Rehearing Standards

Although Facebook requests rehearing by panel or en banc, its petition largely ignores the applicable rehearing standards. Instead, Facebook seeks rehearing based on sweeping, conclusory statements like "[t]his case tests the boundaries of Article III standing" and "the Court should grant rehearing to address whether expansive readings of *Havens Realty* are appropriate in light of subsequent Supreme Court decisions." Petition 1, 17. These generalizations fail to satisfy the court rules.

Fed. R. App. P. 35(a) (rehearing en banc) states that "[a]n en banc hearing or rehearing is not favored and ordinarily will not be ordered unless: (1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions;

or (2) the proceeding involves a question of exceptional importance." Fed. R. App. P. 40(a)(2) (panel rehearing) provides that such petitions "must state with particularity each point of law or fact that the petitioner believes the court has overlooked or misapprehended and must argue in support of the petition."

Petitions for rehearing are seldom granted. *Hart v. Massanari*, 266 F.3d 1155, 1172, n. 29 (9th Cir. 2001) (quoting Judge Richard S. Arnold's observation that "[p]etitions for rehearing [en banc] are generally denied unless something of unusual importance—such as a life—is at stake, or a real and significant error was made by the original panel, or there is conflict within the circuit on a point of law.").[1]

**A.** Facebook insists that this "Court should grant rehearing and join its sister circuits in holding that the [*Twombly-Iqbal*] plausibility standard applies to Article III." Petition 13. This Circuit makes clear that *Twombly-Iqbal* applies in the standing context. *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1056, n. 1 (9th Cir. 2023). Thus, en banc rehearing is unnecessary here because there is uniformity in the Ninth Circuit on this issue, and there is no question of exceptional importance. See Fed. R. App. P. 35(a). Panel rehearing is also unwarranted because the panel majority correctly applied *Twombly-Iqbal* to find that Plaintiffs plausibly alleged standing (see *infra*). See Fed. R. App. P. 40(a)(2).

---

[1] Richard S. Arnold, *Why Judges Don't Like Petitions for Rehearing*, 3 J. App. Prac. & Process 29, 36 (2001) ("[V]ery few petitions for rehearing, either by the panel or en banc, are granted[.]"). Courts are particularly reluctant to grant en banc rehearings: "The institutional cost of rehearing cases en banc is extraordinary.... For that reason, we and our sister circuits have said again and again that the 'heavy artillery' of en banc review should be used rarely." *Keohane v. Fla. Dep't of Corr. Sec'y*, 981 F.3d 994, 996 (11th Cir. 2020) (cleaned up).

**B.**     Facebook also seeks rehearing because the majority analogized to *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) to support its conclusion that Plaintiffs have standing. Petition 13; Mem. 3-4. Facebook avoids addressing the rehearing requisites, arguing instead that "[g]iven the importance of [*Havens Realty*] to the majority's analysis, the Court should grant rehearing to address whether expansive readings of *Havens Realty* are appropriate in light of subsequent Supreme Court decisions." Petition 17. Alternatively, Facebook asks this Court to vacate the panel's opinion until the Supreme Court decides *Acheson Hotels, LLC v. Laufer*, 143 S. Ct. 1053 (petition granted, 2023)—a case Facebook hopes will "provide long-awaited guidance on the tension between *Havens Realty* and modern standing cases[.]" Petition 16 (quotation omitted).  Facebook fails to explain why its desire for guidance on *Havens* justifies rehearing.

Facebook is not entitled to panel rehearing because the majority did not overlook or misapprehend a point of law or fact by analogizing to *Havens*. Fed. R. App. P. 40(a)(2). Nor is the "heavy artillery" of en banc rehearing necessary for uniformity of this Court's decisions; this issue does not rise to the required level of "exceptional importance." See Fed. R. App. P. 35(a); *Hart*, 266 F.3d at 1172, n. 29.

**C.**     Facebook claims that the panel's decision on section 230 "conflicts with this Court's precedent" and creates "meaningful ambiguity" in the Ninth Circuit's section 230 jurisprudence. Petition 17-18. It is unclear how an unpublished decision introduces "meaningful ambiguity" into the Circuit's jurisprudence.

Moreover, Facebook's section 230 argument fails to satisfy the exacting rehearing standards. *See Hart*, 266 F.3d at 1172, n. 29. Although Facebook insists

that rehearing is necessary "to ensure the uniform application of [this Circuit's section 230] precedent," Facebook simultaneously asserts that the Ninth Circuit has a "longstanding interpretation of section 230" that the panel attempted to "sidestep ... via an unpublished opinion." Petition 4, 22. By Facebook's own analysis, this Circuit's section 230 jurisprudence *is* uniform; an unpublished opinion does not alter that. See Fed. R. App. P. 35(a)(1); *Hart*, 266 F.3d at 1172, n. 29.

Facebook also fails to show that there is an issue of exceptional importance or that the panel "overlooked or misapprehended" a "point of law or fact" as to section 230. Fed. R. App. P. 35(a)(2); Fed. R. App. P. 40(a)(2). Facebook's critiques of the majority's analysis are insufficient.

## II.     This Circuit Uniformly Applies *Twombly-Iqbal* in the Standing Context

**A.**     Desperate for a second bite of the standing apple, Facebook concocts an alleged intra-circuit split, alleging that this Court "frequently" applies inconsistent sufficiency standards when assessing standing allegations. Petition 9. According to Facebook, the Court sometimes uses the *Twombly-Iqbal* standard, and sometimes refuses to do so (citing *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011)).

To support its claim that this Court intermittently refuses to apply *Twombly-Iqbal* to standing, Facebook cites only *Maya* (and of course the panel majority's opinion). Petition 9. The reason Facebook does not provide additional examples is because the Circuit abandoned *Maya*'s approach years ago.[2] Indeed, this Court

---

[2] See, e.g. *Center for Biological Diversity v. Bernhardt*, 946 F.3d 553, 560 (9th Cir. 2019) (applying *Twombly-Iqbal* to standing); *Namisnak v. Uber Techs.,*

recently squarely held that: "As *Winsor* and *Namisnak* implicitly recognized in applying *Iqbal*'s pleading standards in evaluating facial challenges to standing allegations, our previous suggestion [in *Maya*] that *Iqbal* does not apply in that context . . . is thus ***no longer good law***." *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1056, n. 1 (9th Cir. 2023) (emphasis added). Accordingly, it is abundantly clear in the Ninth Circuit that *Twombly-Iqbal* applies in the standing context.

**B.** Facebook mistakenly argues that the panel majority applied *Maya* instead of *Twombly-Iqbal*. Facebook latches onto a general statement of law included in the majority opinion: "Under Federal Rule of Civil Procedure 12, the bar to allege standing is not high. *See Maya v. Centex Corp.,* 658 F.3d 1060, 1068 (9th Cir. 2011) (holding that '*Twombly* and *Iqbal* are ill-suited to application in the constitutional standing context')." Mem. 2. To Facebook, this language proves that the "majority relied on *Maya*." Petition 8, 10. Not so. Although the majority recognized that *Twombly-Iqbal* is not particularly well-suited to address standing questions, it did not reject or refuse to apply this standard.

Importantly, the panel's 2-1 split was not over whether *Twombly-Iqbal* applies to standing; all panel members agree that it does. The disagreement was whether Plaintiffs' allegations here were in fact plausible.[3] The standing analysis centered on

---

*Inc.*, 971 F.3d 1088, 1092 (9th Cir. 2020) (same); *Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 524-25 (9th Cir. 2023) (same).

[3] *Compare* Mem. 4 ("[I]t is ***plausible to infer*** that one or more of the ads that Plaintiff Vargas could not access because of Facebook's methods was paid.") (emphasis added), *with* Dissent 1-2 (asserting that Plaintiff Vargas ***failed to plausibly allege*** that she was excluded from seeing paid ads) (emphasis added).

Plaintiffs' allegations that Plaintiff Vargas conducted a side-by-side housing search on Facebook with her Caucasian friend, and despite using identical criteria, she received fewer, less favorable results than her friend. For dissenting Judge Owens, these allegations were inadequate because Plaintiffs (1) did not plausibly allege that discrimination was the cause of their inability to find suitable housing ads, (2) failed to identify an ad or advertiser engaging in housing discrimination via the Ad Platform, and (3) did "not specify whether the ads [Vargas'] Caucasian friend saw were user-generated or paid[.]" Dissent 1-2.

The majority panel disagreed, first concluding that Plaintiffs sufficiently alleged that housing discrimination was the cause of their restricted results because they alleged that "[Plaintiff Vargas'] Caucasian friend saw more, and more responsive, ads ... even though they used identical search criteria." Mem. 3. Second, the majority did not fault Plaintiffs for their inability to identify specific ads or advertisers given that their claims arose from Facebook's concealment of information. Mem. 4. Finally, because Plaintiffs alleged that a vast amount of paid advertising is hosted on Facebook, the majority concluded it was "plausible to infer that one or more of the ads that Plaintiff Vargas could not access because of Facebook's methods was paid." Mem. 4. The panel majority concluded that Plaintiffs' standing allegations are plausible because Plaintiffs' claims assert substantially more than a "sheer possibility" that Facebook facilitated illegal housing discrimination. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Indeed, Plaintiffs specifically allege a firsthand example of Facebook's discriminatory ad targeting.

9

Ultimately, Judge Owens' disagreement with the majority reflects the discretionary nature of *Twombly-Iqbal* plausibility assessments. See *McCauley v. City of Chicago*, 671 F.3d 611, 625 (7th Cir. 2011) ("*Iqbal*'s reliance on 'judicial experience and common sense' invites the highly subjective and inconsistent results that have been observed."). Put simply, the panel's split over plausibility is symptomatic of a subjective standard, not grounds for a rehearing.

## III.    The Panel Majority's Standing Analysis Comports with *TransUnion*

Facebook argues that the panel majority's conclusion that Plaintiffs have standing is erroneous because it is based on an "expansive reading" of *Havens*—a reading that Facebook contends conflicts with *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021). Petition 14-15. According to Facebook, Plaintiffs merely alleged statutory violations without showing concrete harm and the majority applied *Havens*' "outmoded vision of standing" to bypass *TransUnion*. Petition 3, 14.

Facebook's argument is disingenuous. Plaintiffs allege facts showing that Facebook caused them concrete harm by facilitating housing discrimination in violation of the FHA. Appellants' Opening Br. 31-38; Reply Br. 9. The panel majority relied on these facts to conclude that Plaintiffs allege "a ***concrete and particularized injury***—deprivation of truthful information and housing opportunities[.]" Mem. 4 (emphasis added). While the panel did include *Havens* in a parenthetical in its discussion of Plaintiffs' standing allegations, it did not read that case expansively to flout *TransUnion*, as Facebook suggests. Rather, the panel simply analogized to *Havens* to show that testers have been found to have standing under the FHA. Mem. 3-4.

The key to *TransUnion*'s holding is that alleged statutory violations are insufficient to give plaintiffs standing *if* the violations do not cause any concrete harm. *TransUnion*, 141 S. Ct. at 2205. But where plaintiffs *do* allege concrete harm—as Plaintiffs do here—the fact that a defendant's statutory violation caused that harm does not negate standing. *See Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1100-01 (9th Cir. 2022). Therefore, because Plaintiffs' allegations (and the panel's ruling) comport with the dictates of *TransUnion*, Facebook's concerns about "expansive readings of *Havens*" (Petition 17) have no bearing on this case.

## IV. The Panel Majority Properly Applies Section 230 Precedent

Although Facebook insists that the panel majority misapplied this Circuit's section 230 precedent, a plain reading of the majority opinion shows otherwise. The panel majority found that Facebook ineligible for section 230 immunity because "Plaintiffs' claims challenge Facebook's conduct as a co-developer of content and not merely as a publisher," and "Facebook's own actions contribute[d] materially to the alleged illegality of the conduct." Mem. 5-6 (quoting *Roommates.com*, 521 F.3d at 1168). Facebook used its algorithms to assign categories to its users, created an Ad Platform that allowed advertisers to use features to easily exclude users based on protected characteristics, and invited housing advertisers to use this exclusionary tool. Mem. 5-6. Accordingly, Facebook's direct involvement in the discrimination at issue made Facebook "much more than a passive transmitter of information provided by others; it [was] the developer, at least in part, of that information." Mem. 7 (quoting *Roommates.com*, 521 F.3d at 1166).

**A.** Facebook claims that the majority contravened the holding in *Dyroff v. Ultimate Software Group, Inc.,* 934 F.3d 1093, 1098 (9th Cir. 2019) by framing Facebook's "website features" as content. Petition 19. Facebook uses *Dyroff* out of context in a misleading manner. In *Dyroff*, the Court rejected the plaintiff's argument that a website had created content by recommending drug-related discussion groups to users and sending users email notifications about posts in those groups. *Id.* at 1095, 1098. The Court there clarified that the content at issue was the drug-related posts; the recommendations and email notifications were simply tools designed to facilitate this content. *Id.* at 1098.

Facebook misses a critical distinction between this case and *Dyroff*. In *Dyroff*, the website's users—by themselves—created unlawful content. The website then passively transmitted that content through its recommendation and email alert features. *Id.* In contrast, here Plaintiffs do not seek to hold Facebook liable for the contents of housing ads—which are lawful in and of themselves—but instead for Facebook's own conduct. Plaintiffs allege that Facebook mined its users' data; used the data to create algorithms that allow advertisers to easily prevent users in protected classes from seeing ads; discriminatorily distributed ads through its algorithms; and promoted its exclusionary tool to housing advertisers. This conduct led the panel to find that Facebook lost its section 230 immunity, not a conflation of neutral "website features" with content. See Petition 19. Mem. 5-6.

**B.** Next, Facebook criticizes the panel majority's analysis of *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir. 2008). The majority acknowledged that Roommates.com required users to self-

identify select protected categories from a list, whereas Facebook does not generally require this type of self-identification. Mem. 7. However, the majority emphasized that Facebook *does* require users to self-identify with respect to two protected categories: age and gender. *Id*. Then, Facebook uses its algorithms to capture, analyze, and classify user data to group its users into various categories, even if a user does not want to reveal some of those characteristics. *Id*.

Facebook claims that the panel's reasoning runs afoul of *Roommates.com* because the holding there "rested on the fact that the website requir[ed] subscribers to provide the information that was allegedly unlawful." Petition 20 (quoting 521 F.3d at 1166). Besides making this conclusory statement, Facebook makes no attempt to grapple with the majority's reasoning. Facebook does not dispute that it requires users to self-identify their age and gender, nor that its algorithms invasively mine user data and use the data to assign users to various categories (including many protected categories), regardless of whether each user wants (or intends to) self-identify in these categories.

Second, the majority rejected Facebook's contention that this case is different from *Roommates.com* because Facebook's Ad Platform does not require advertisers to engage in illegal discrimination. The panel rejected this purported distinction because Roommates.com also did not require third parties to discriminate given that users could select options pertaining to all persons within a category (e.g., "straight or gay"). Mem. 7. According to Facebook, this Court "rejected that very line of reasoning in *Roommates* sending a 'clear' 'message to website operators': if they do not 'design [their] website to require users to input illegal content, [they] will be

immune.' Petition 21 (quoting 521 F.3d at 1175). Facebook is wrong. The actual quote in *Roommates.com* is "[t]he message to website operators is clear: If you don't **encourage illegal content**, or design your website to require users to input illegal content, you will be immune." 521 F.3d at 1175 (emphasis added). The panel properly concluded that section 230 immunity does not apply because Facebook encouraged illegal housing discrimination by "identif[ying] persons in protected categories and offer[ing] tools that directly and easily allowed advertisers to exclude all persons of a protected category (or several protected categories)." Mem. 8.

Finally, the majority rejected Facebook's argument that *Roommates.com* is inapposite because Ad Platform is available to all types of advertisers and lawful in some contexts, whereas Roommates.com only pertained to housing. Mem. 8. The majority was "unpersuaded" by this distinction because a "patently discriminatory tool offered specifically and knowingly to housing advertisers does not become 'neutral' ... simply because the tool is also offered to others." Mem. 9. Facebook calls this a "novel conclusion" that "contravenes *Roommates*." Petition 21.

According to Facebook, Roommates.com's tools were **not neutral** because they "necessarily 'subject[ed] subscribers to allegedly discriminatory housing practices,'" whereas Facebook's Ad Platform is a neutral tool because it can be used lawfully in non-housing contexts. Petition 21 (quoting 521 F.3d at 1172). Facebook mischaracterizes this Court's reasoning in *Roommates.com*. The reason Roommates.com lost its immunity was because it was "directly involved with developing and enforcing a system that subjects subscribers to allegedly discriminatory housing practices." *Roommates.com*, 521 F.3d at 1172. Nowhere did

the *Roommates.com* Court suggest that Roommates.com would regain immunity if it also offered its tools in non-housing contexts. Because Plaintiffs allege that Facebook was directly involved in facilitating housing discrimination, the majority properly found that Facebook's tools are not neutral, regardless of their availability to a wide variety of advertisers. *Id.*; Mem. 9.

The panel majority's decision on section 230 is consistent with Ninth Circuit longstanding precedent and should not be disturbed.

## CONCLUSION

Plaintiffs respectfully ask this Court to deny Facebook's request for panel rehearing and/or rehearing en banc.

Date: September 27, 2023        **MANTESE HONIGMAN, P.C.**

*/s/ Gerard V. Mantese*
1361 E. Big Beaver Rd.
Troy, MI 48083
(248) 457-9200
GMantese@manteselaw.com
*Attorney for Appellants.*

15

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

## 9th Cir. Case No. 21-16499

I am the attorney or self-represented party.

This brief contains **3,824** words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief:

[X] complies with the word limit of Cir. R. 32-1.

**Signature** _____ s/ Michael D. Seplow _____ **Date: September 27, 2023**

*(use "*s/[typed name]*" to sign electronically filed documents)*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2023, I electronically filed the foregoing document APPELLANTS' RESPONSE TO APPELLEE'S PETITION FOR REHEARING EN BANC OR PANEL REHEARING with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I hereby certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Date:    September 27, 2023                    By: *s/ Michael D. Seplow*